2102. Mr. Bradley. Thank you, Your Honor. Good to have you with us, sir. Thank you. The court issued an order about the jurisdictional diversity jurisdiction. How do you want to handle that? It's up to you and counsel. I mean, that's up to you and the questions you get. Okay. I would love to just get this out of the way if we can, just to ask you right out of the gate. The two specific questions I have is the complaint alleges, it alleges a headquarters, excuse me, it alleges a headquarters for Ciox, but it does not actually allege where Ciox principal place of business is. Right, Your Honor. Where does the plaintiff allege that Ciox principal place of business is? It's in Georgia. And where, and then it also does not allege, as I recall, where Ciox is incorporated. Where does it, where do the plaintiffs allege Ciox is incorporated? Also in Georgia. And you're wishing to make a motion to amend your jurisdictional allegations on appeal? Yes, Your Honor. Under, you know, that section 1653 and Rule 10E of the Pellet Procedure. So we would make that motion. Maybe Ciox will stipulate that their headquarters is in Georgia, the principal place of business. Those are all the questions I had about jurisdiction. Thank you, Your Honor. So may it please the court. Here are the questions this court needs to answer. First, does the South Carolina's Physicians Patient Records Act give rise to an implied right of action? Second, if it does give rise to an implied right, can we sue defendants directly under the act, even though the act only mentions physicians and other owners of medical records? And third, if there is no implied right, or there is, but we can't sue the defendants directly under the act, can we still sue them for unjust enrichment? And I'm going to get to each of those questions. So the first question, does the Patient Records Act give rise to an implied right of action? The two critical cases here are Sloan v. South Co. and DEMA v. Tenet. Can I ask you, before you get too far down that road, doesn't the Unfair Trade Practices Act have a private right of action? In South Carolina? Yes. I believe it does. It doesn't allow class actions. And doesn't it also define an unfair trade practice as a health care provider charging a fee in excess of $0.65 per page, charging a fee for searching and handling medical records, et cetera, et cetera? It has a definition of unfair trade practices that exactly matches the definition, exactly matches the fees that you are disputing in this case under the PPRA. Right. And I would say that even acted in the same legislation. South Carolina legislature in 1995 amended the PPRA, the CON Act, and the Unfair Trade Practices Act to make these amendments about the charges for the fees in all three. And they put the private right of action in the Unfair Trade Practices Act, didn't they? Yes. Why didn't you mention that in your brief? Well, we didn't sue under the Unfair Trade Practices Act. But you have a right to sue under that. And isn't that informative for whether we should imply a right to sue under the PPRA directly? Isn't that one of the prongs of the analysis? No, I think the Enforcement? That's right. Yes. But you've got to look at each statute on its own terms. Because the Patients Records Act has a whole bunch of other provisions that should be enforceable as well that you wouldn't be able to get to under the Unfair Trade Practices Act. So the provisions that you're suing under in the PPRA that you can't sue for in the Unfair Trade Practices Act? There are. Do you have a copy of that? And if that's the case, doesn't that suggest the legislature doesn't want you to have a private right of action to sue for those? You know, it has to do with whether they can withhold records. For instance, this is an example for unpaid medical bills. But no, I think you have to look at the PRA. Just because you can sue under another doesn't mean you can't sue under this one. And I see what your Honor is saying. That can inform it. But I think you've got to look at what the South Carolina Supreme Court has done with, say, the Conn Act versus the Patients Records Act. So what I would say is that the legislature, when they added these requirements to the PRA and the PPRA, they also added a private right of action. And they did it in the Unfair Trade Practices Act. Why is that not? Why doesn't that answer the question of how you enforce the provisions you're trying to enforce in this lawsuit? Well, even if you can enforce it, that doesn't mean we can't enforce it under the act directly. Sure it does. South Carolina doesn't imply a right of action in a statute when another when you already have a right of action. That's certainly the case when it comes to equitable remedy, when you have a right of law. And the fact that they created a right of law in a different statute and didn't do it in this one for the exact same things is highly probative of whether they wanted to create an implied right of action under this statute. Isn't it? Well, your Honor, we didn't sue under the act. I did not prepare for that. I would have to go back and look at that act. There are other prohibitions on that. You know, I'm bringing that claim. You can't bring a class action. You can't bring a class action. Yeah. And you want to bring a class action? Yes, your Honor. And I think that's important. And we'll actually get to that when we start looking at unjust enrichment and also whether we can disregard the plain language. So I do think that's important. You can't bring a class action. It's important. Again, I just want to flag, you did not put this in your brief and I think it's important and you agree it's important. And neither party raised it. Right. But I would argue that because you can't do a class action, that, you know, that's why we would sue under the Patient Records Act. I understand why you'd want to. Right. It's the question of whether you're allowed to is a bit different. Yeah. Okay. Well, so, you know, what I would say is Sloan says that if a statute is enacted for the benefit of a private party rather than the public, you can bring an implied right. And the thing that the court found determinative in Sloan was that the statute it issued didn't have its own enforcement mechanism. We have a massive threshold problem before we get, let's talk about the statute you've sued under. It strikes to me before you have the private right of action, you have a massive threshold problem, which is that there's a list of people that are regulated by this statute and they're not covered by it. So you're talking about the, I'm sorry, you're. Let's assume for the sake of argument, you have a private right of action. You could have sued the providers because they are assuming there's a private right of action. Providers are covered by this statute. But you didn't sue the providers. You sued someone who is not covered by the language. Okay. Right. And so we're skipping ahead to the plain language question because we're, as you said, assuming there's a private right. Well, why don't you sue the doctors? And that's the question that the Sixth Circuit. I suspect I know the answer to that, too, because if you sued the providers, it would be hard to get class certification because you'd have to sue a whole bunch of different providers in one proceeding. Is that the reason? That is an important reason, you know, as a practical matter. But, you know, the other reason is, is, you know, look at what the plain language test is. It's a line drawing test, right? So, you know, we can all read the same questions and have a different opinion. I mean, I'm sorry, we can all read the same cases and have a different opinion about whether those cases cross the line of when you can disregard the plain language. I think the question that you're getting at, it boils down to the question the Sixth Circuit asked in favor and the Seventh Circuit asked in record quest, which is, you know, why don't you sue the doctors? And the answer is because it's just not economically feasible. There's no way you can justify bringing an action against an individual medical practice based on the cost of bringing that case compared to the expected recovery. So if you can only do that, it renders the Patient Records Act meaningless. So that's the answer to the question. Why can't you sue the doctors? You're going to, I'm sorry, Your Honor? Patients generally don't like to sue their doctors. No, they don't normally like to sue their doctors. And, you know, my point would be that whether you went under, because it prohibits class actions, whether you went under the you're going to be missing out, you know, there's going to be a huge Why on earth does that matter for how we interpret the statute? Maybe the South Carolina Legislature knew all this and they said, but we only want you to be able to sue this list that we specifically put in the statute. Right. I think, though, and I, you know, I understand your argument, but I don't think that's true. I mean, I don't think the South Carolina Legislature, when they enacted the Patient Records Act in 1997, envisioned this industry of large companies that go out and try to squeeze every ounce of profit they can out of providing medical records. You're saying there's a statutory loophole. You're saying over time a loophole has been created where physicians realize this is how the statute is written. And if you use this other mechanism, you know, a loophole exists. Where is where is the canon of interpretation that says courts can fill statutory loopholes by rewriting very plain, unambiguous statutes? Well, you've got in South Carolina, the South Carolina Supreme Court has said it will look at modern economic considerations. And I believe that's the keying case, which we cite in our case. But look, Why did you all wait until you got up here to suggest that this issue ought to be certified to the Supreme Court of South Carolina? Well, Your Honor, you know, I'll tell you, you know, I don't know. It's a really nice question. So, Your Honor, the question of certification, I think, comes down to a matter of comedy and federalism. It's really up to Your Honors, right? And I know there's the cases, but But you didn't ask Judge Hendricks to certify the question. We did not, Your Honor. We did not, Your Honor. And this wasn't a case where you sued them in state court and they removed it. This is a case where you sued them in federal court, right? Right. So my answer on the certification issue is it's, like I said, that's really a matter for your court to decide. If you think there's an unsettled premise. I think Judge Heitens is pointing out it was a matter for you to decide. And you decided you wanted a federal court to decide this question, not a state court. Was that right? Initially, you did. Initially, we did, because we knew we would get, well, no, because we knew we would get removed under CAFA. But when you lost, you threw in an alternative position. Okay. Certified. Okay. I'm not, I assume that's what you. That's what happened, Your Honor. You're right. And there's the cases saying it's disfavored in those circumstances. I'm not sure that makes sense. Disfavored in those circumstances. And our answer could be, well, even if, looking at all those circumstances, we should try to get the law right. I agree, Your Honor. That's the final bottom line for all of it is we want to get, we ought to have the right answer. Right. And that's what I was saying. It's a matter of comedy and federalism. We're best able to decide what South Carolina law is. That's right, Your Honor. And our Fourth Circuit Court of Appeals, I mean, they being the Supreme Court of South Carolina, even if we decided it, it wouldn't be precedent, it wouldn't be controlling. We just, it's just there. Right. So I want to get back now to where we were, which was this remedial gap. And we would bring a class action. You can't bring a class action under the Unfair Trade Practices Act. Well, where does that leave me? Well, if you don't agree with me that we can disregard the plain language, there's still the unjust enrichment claim. And it's important because what the district court did is, first of all, it skipped to the question of the plain language. And then it went back and said, well, you don't have a private right either. It didn't really give much analysis there. And then it dismissed the unjust enrichment claim without any analysis. So I'd actually like to first go back because we didn't finish on the private right. So what I said was Sloan stands for the proposition that if it's enacted for the benefit of a private actor, you can have a private right, an implied private right. So the defendants hang their hat on DEMA. And they say that that case holds that a statute that benefits medical patients can never give rise to an implied right. And then they also say that DEMA stands for the proposition that the more likely a member of the general public can become a member of the group a statute benefits, the less you can read an implied right into the statute. But how does that make sense, right? That would mean that the more widespread the conduct is that violates a statute and the more people who are harmed by that conduct, the less you can read an implied right into a statute. DEMA doesn't say that. No case says that. It's a made-up proposition with no basis in law. So what did DEMA actually do? Well, the court pointed to exactly two reasons for denying an implied right in the CON Act. And the first was, quote, the expressly stated purpose of the act was to, quote, serve public needs. And second, the act has its own, quote, enforcement mechanism, including criminal penalties and fines. That's it. That's all it says. It doesn't say that a statute enacted for the benefit of medical patients can never give rise to an implied right. It doesn't even suggest that. No, the reason the court found no implied right in DEMA is because the CON Act was enacted for public needs and it had its own enforcement mechanism. And that is important. And the last point about no enforcement mechanism is important because every single case they involved a statute that contained its own explicit enforcement mechanism, like the CON Act, but unlike the Patient Records Act. Every single case is distinguishable on that basis. And just to be clear, you do have an enforcement mechanism here, right? Right. But it's an inadequate one. Because? There's going to be a remedial gap. If you sue the doctors, you know, again, No, no, no. You have a remedial mechanism here to sue health care facilities or health care providers under the Unfair Trade Practices Act for everything that you're complaining about. Yeah, yeah. So one thing I would say under the Unfair Trade Practices Act is that there's the right to access your medical records. It's not just about overcharging, right? So that would be the point. Again, there's a remedial gap. That's the one where the PPRA actually does have its own enforcement for that one piece of accessing medical records. The PPRA itself actually makes an unreasonable refusal to release a medical record subject to disciplinary action under the state medical board, right? So that's the only piece of the PPRA that actually has its own enforcement in the PPRA itself. You don't even have to go to the Unfair Trade Practices Act for that one, right? That's enforced by the medical board. That one piece is. Okay, well, I think when we're looking at whether there's a private right, I think Sloan is the more instructive case. So Sloan also involved overlapping statutes. It was the South Carolina Payment Protection Act and South Carolina's Little Miller Acts, which were modeled on the Federal Miller Act. And the court below denied an implied right under the Payment Protection Act based on there is no implied right under the Miller Act. The Supreme Court specifically rejected that approach and found an implied right under the Payment Protection Act because it, quote, essentially picked up where the Little Miller Acts left off by outlining a more extensive payment protection scheme dedicated specifically to subcontractors and suppliers. You have to look at each statute on its own terms. The Patient Records Act explicitly gives enforcement mechanism. I'm sorry. The Patient Records Act explicitly gives patients the affirmative right to access their medical records, and then it has all those provisions that expand on that right, including the fee caps. The CON Act has nothing to do with patients. It doesn't give patients any affirmative rights. And while it does set forth what health care facilities can charge, it has nothing to do with medical records otherwise. So I would say that the Patient Records Act is just like the Payment Protection Act in Sloan. Even though it overlaps on that one provision with the CON Act, it sets forth an extensive scheme to benefit plaintiffs but contains no enforcement mechanism so that an implied right is necessary for patients to vindicate their rights. That's the language they used in Sloan. Their other argument is that there's no implied right because DHEC and the Board of Medical Examiner's have... Why don't we ask them what their other argument is, what their arguments are? I'm sorry, Your Honor. Why don't you know what that red light means? I'm sorry, Your Honor. Okay. I say we'll let them explain what their position is. Okay. And I really do want to get to unjust enrichment, but I'll do that on my... You've got some rebuttal. But you were explaining their position. I want to let them explain their position. Oh, I'm sorry, Your Honor. I thought you were telling... No, no, no. Your time's up. I'm going to wait until you... I don't want to hear... I don't need to hear their position from you. I want to hear it from... Okay. Are you saying my time is up? Well, it's red light. Yes, okay. That's what that's for. Thank you, Your Honor. Yes. Mr. Bentheim? I may please the Court. Gilad Bentheim on behalf of Appellee's Sox Health LLC and ScanStat Technologies LLC. If it's okay, Your Honor, I'd like to pick up on some of the questions that you identified from my opposing counsel. I think they... Speak a little louder. I'm sorry. I want to just pick up on some of the questions that you raised with my opposing counsel, because I think they resolved the issue. If it's all right, Judge Hytens, I'd like to start with your question first, which is why not sue the provider? And the answer that my opposing counsel gave is that we wouldn't have class action available. But the important point to recognize is the legislature, the General Assembly, placed those limitations into the statute. They're unambiguous, and no one claims otherwise. And the problem that my opposing counsel identified would be exactly the same in a world where Sox and ScanStat didn't exist. In a world where there was no record providers and hospitals were doing this by themselves, you still wouldn't have a plausible class action along the lines they're identifying because it would be the hospitals you'd have to go after. You cannot change and rewrite the General Assembly's plain language to grieve yourself the right of a class action, especially where it wouldn't change even in the ideal world that they're identifying where my client doesn't exist. So can I just confirm this? So under South Carolina law, Sox is not allowed to own these records. Is that right? That's correct, Your Honor. So to the extent you're owning them, you're doing it as sort of a bailee or an agent of providers, right? We're not owning them at all. The ROI service, the retrieval of information service, would retrieve the information either from the hospitals themselves or the hospitals themselves. No, but I just mean to the extent that Sox has possession of them, the only way that is not itself illegal is if you're doing it as the agent or bailee of the lawful owner. Yes, Your Honor. And so then when you charge, and then you agree that under South Carolina law, they have a right to get the records from their providers. South Carolina law says if your provider is holding your record, you have a right to get your record from your provider. Under the PPRA, it's from a physician or a medical owner. Under the CON Act, it's from a health care provider. So that when they make a request to their provider and their provider refers it to you, the provider is doing that as part of the provider's obligation to supply the records, right? Yes. So that when you then supply them and charge them a fee, you are doing that as an agent of the provider. Sure, yes. So that would mean that for purposes of suing the provider, they could – I understand your point in the brief that says you normally can't sue an agent for the acts it takes as an agent, but you can definitely sue the principal for the acts that the agent does on behalf of the principal. There is no claim in this case that the appellants could not have sued the hospitals under the Act to the extent that Sox or Skanska has violated the Act. To the extent that you're charging more money than the statute allows the provider to charge. And that is a private right of action. Right. And that is imputed right back to the – yes, fair enough. Okay. So you're not disputing any of that. It's just you're saying you can't sue the agent for its acts as an agent. You have to sue the principal for the acts of an agent. Under the very plain text of the PPRA, that's correct, Your Honor. What about their unjust enrichment claim? They say, sure, even if you were the agent, you didn't remit the fees to the principal, and unjust enrichment lets us sue the person who's holding the fees because they have the money. So, Your Honor, that's a sort of general principle of unjust enrichment, but I think as the Sixth Circuit made very clear in favor, who you can sue ultimately depends on who the statute allows you to sue. And I think the question you're asking gets back to the precursor question, which is, well, is an unjust enrichment action even viable here where plaintiffs are the master of their complaint? The sole basis for the unjust aspect of unjust enrichment is the violation of the statute. That's what I just wanted to clarify is even if we go through analyzing who could they sue under the statute, there's still this kind of unanswered piece about unjust enrichment. And the answer to that is whether there's a private right of action. There's not another answer to unjust enrichment that I saw in the briefs, at least. Your argument in response to that goes back to there's no private right of action, and if you have a remedy at law, then you don't imply a remedy in equity. So I think that, Your Honor, there are maybe two points. If you do have a remedy at law, if this court were to read an implied private right of action into the PPRA, then, yes, you would not have a remedy for unjust enrichment. That's just basic election of remedies. But I think the other argument is in a world where there is no implied right of action, then this court has determined that the legislature did not intend for there to be one. And then under Hambrick, under the third restatement, you do not use an unjust enrichment to circumvent that plain language. And so you wouldn't have an unjust enrichment action in either situation, either because of an election of remedies or because it's improper. Tell me about the implied right of action and why we're not talking about the explicit right of action that the South Carolina legislature created. So, Your Honor, as you noted and I think as you asked the other side, nobody briefed that issue, and I'm not personally familiar with the Unfair Practice Act. But I would say that from what the other side noted, it is of a piece with what you've seen in their pleadings. They didn't pursue the Unfair Practice Act because it didn't let them have class action. They didn't pursue it under the Con Act, which, as we briefed, was really the proper statute in a world where there was a private right of action. The providers here are not physicians. They're hospitals. And so they don't fall under the Physician's Patient Record Act in any world. They didn't go under the Con Act because the South Carolina Supreme Court already has been explicit that that does not have a private right of action. And so they go through the PPRA, but as we've briefed, it also doesn't include a right of action. And now, as I'm hearing, the single aspect of it that they're most concerned about is the element that the board explicitly can enforce, the withholding of records improperly. So it is of a piece, Your Honor, with the point that there is no reason here to believe that the South Carolina Supreme Court, and, of course, this court's sitting in diversity, and so that's the law we're going to look to, the South Carolina law as interpreted by the South Carolina Supreme Court. There's no reason to believe the South Carolina Supreme Court would disregard the plain text of the PPRA, disregard its ruling in DEMA, and rule that there's an implied right of action here. And I'd like to address Sloan for a minute because Sloan is the exception that proves the rule. South Carolina applies, actually, in my understanding, a unique single-factor test for determining whether or not to imply a private right of action. That's whether the statute is enacted for the special benefit of a private party. It's unique, and it's an incredibly high bar. By my count, since 1985, when the South Carolina Supreme Court introduced the statute, this rule in Whitworth, it's addressed the question 12 times. In 11 of the 12, it has said no private right of action. Sloan is the one time it did, and Sloan's never been cited again for the purpose. It's never been distinguished because the court doesn't think that it really is a relevant thing to deal with. It is an outlier. It has never been addressed again. It is so unlike all the other situations that the court has dealt with. And if you look at some of the classes that the South Carolina Supreme Court has identified and said, this doesn't count as a private party. Drunk bar patrons who get served an extra drink in violation of the statute, not a private party. Inmates who voluntarily opt into certain work programs who aren't paid the prevailing wages they're allowed, not a private party. Here we're talking about every single medical patient in the state of South Carolina. It's just not plausible to believe that the South Carolina Supreme Court would dispense with its years of its very high bar, treating the implied private right of action as a very high bar, dispense with its ruling in DEMA, which was, again, on the same fee limit and with the same access right to records, and said, you know what, that's for the benefit of all people receiving health care. That doesn't count. There's no reason to believe that they would go any differently in the PPRA. Did Sloan even go as far to say there was an implied private right of action? I thought it said this makes you a third-party beneficiary of these contracts. Looking at the statute and the purpose of the statute, we can imply that you are a third-party beneficiary of contracts outside the statute. I guess it's murky on what they did there. Sloan has a very convoluted appellate history afterwards with the Shirley case. Right, Shirley said there's not an action for tort. And so what Sloan said, and my opposing counsel got into it a little bit, was that there was this very unusual world where the federal law governed the space and South Carolina law governed the space, the Miller Act and the Little Miller Act, and there was still a remedial gap for particular people, contractors and subcontractors, on government programs. And so by adding yet a third act that specifically gave them those rights, it was fair to read in that there was something for that very specific group that was missing and that needed to be provided. It's just not analogous here. There's no analogy here to all medical patients in the state of South Carolina who have the right to access records and to a certain fee cap under the PPRA. I would like to touch for a moment, Judge King, on your point about certification. I was going to ask you about that at some point. Go right ahead. What do you make of that suggestion? In addition to what I've just mentioned, which is that there's really no question under South Carolina law how the South Carolina Supreme Court would deal either with the implied right of action or the plain language of the statute only applying to physicians and owners of medical records. But as this court has mentioned, the appellants filed this case in federal court, not in state court. And you see in their reply brief, they say that they mentioned repeatedly how novel this question was. And yet this novel question was not brought into state court. They didn't ask the district court to certify it. And only once they got here did they ask in the final sentences of their conclusion with no argument and the alternative that this should be certified. This is gamesmanship at its clearest. And even if this weren't as clear as it is, and it's respectfully very clear what the South Carolina Supreme Court would do in the situation, it would be improper to certify this question at this late stage. We're supposed to decide the case under the proper law, and we can't bind the South Carolina courts by making a decision on South Carolina law. We don't. Only the Supreme Court of South Carolina can do that. Your Honor, that's absolutely right. And they waited and didn't do anything. I don't think a principle of waiver comes into play. They can't come up here and get us to do it just because they brought the suit over here. It's still up to South Carolina. If we agree that it's clear with you, we got some cases that help you on that. So I'll take your last. I agree. We're not arguing. One of our greatest judges, Judge Hainsworth, back in 1984, wrote an opinion about the certification stuff, and he said pretty much what you said. And, Your Honor, we're not arguing waiver. They bring a case here and all that. We ought to just sign it and take our best shot. That's exactly right. So we're not arguing waiver. But we've had other cases that say the other thing. We're required to do it right. The point I think we're making is there's two points. One is that the right answer here is incredibly clear. The South Carolina Supreme Court said it in what we think is a dispositive ruling in DEMA. Their entire corpus of the South Carolina Supreme Court's rulings on the implied private right of action make clear that this is not something that they will presume lightly, especially as Judge Rushing mentioned where there is going to be an additional enforcement mechanism in the Unfair Practices Act. I'd say the standard in South Carolina, what makes it unique, is really a one-factor test for the purpose of private party and the additional enforcement action is supportive. So it certainly would support the idea that there is no implied private right of action here. But the point we were making about the appropriateness of certification is that, aside from the fact that this court can easily determine the question on their own, there is something problematic about the way it was brought up. And to the extent that this court feels that it's unsure, it wouldn't bind the South Carolina courts to say this is how we decided on this record. We don't think it's appropriate to certify. So I don't think the fact that this doesn't bind the South Carolina Supreme Court means that this court should or should not certify the question, especially given here that it's, I think, very straightforward. I think I've addressed all of the questions or all of the issues that I think we need to address. If the panel has any other questions, I'm happy to answer them. Thank you very much, sir. We appreciate having you here. Yes, Mr. Bradley. Thank you, Your Honor. So first thing, the South Carolina Supreme Court did explicitly hold there was an implied private right of action in the Payment Protection Act in Sloan. That's at 659 S.E. 2nd at 163. And I think Sloan definitely shows that you've got to look at each statute on its own. And it's the question, does it benefit a private party? Yes, it does. There's a private right of action under the Patient Records Act. And so that brings up to this question of unjust enrichment, the payover defense. If the agent still has the money, you can get the money from the agent. You don't have to sue the principal. That's a venerable proposition of law. It's Restatement Comment B. I'm sorry, Restatement Section 65 Comment B. There's 2A CJS Agency Section 375 says the same thing. We cite cases that say the same thing. And South Carolina recognizes the principle too. It's not in our briefs, but Nobles v. Mosley, the Supreme Court, it was in the context of an escrow agency, said that the principle is not a necessary party to a claim for unjust enrichment. And the cite for that is 70 S.E. 2nd 247 at page 248. I want to clear something up on that point because we cited the Harwood case. That's where the Eastern District of Wisconsin referred to this rule as an issue of agency law and said it was, quote, a different theory of liability from unjust enrichment. And the Seventh Circuit said the same thing. It's not a different theory. It's just that old venerable proposition that your status as an agent cannot defeat an unjust enrichment claim where those elements are met. Again, comment B to Section 65, the CJS. Look at the Sheboygan case that Harwood quotes and look at Nobles v. Mosley. So under South Carolina principles of law and equity, we can sue defendants for unjust enrichment as agents of the doctors and other owners of medical records because defendants still have the unjust gains. And allowing us to do that makes sense. Why should we have to sue the doctors when doing so, even if it were economically feasible to bring individual practice actions against the doctors, why should we have to? It's the defendants are the ones who charge the illegal fees. They're the ones who profited from the fees at plaintiff's expense. So it doesn't make sense that we should have to sue the doctors who would then turn around and have to sue the defendants anyways. The law doesn't require us to run around in circles. And even if there's not an implied right under the Patient Records Act, Section 44 of the restatement doesn't say you can never have a claim for unjust enrichment if there's no private right of action under a statute. It allows it where it would conflict with the other remedies and liabilities in the statute. And we don't have that. And South Carolina has taken a flexible approach to unjust enrichment. I would point you to Columbia Wholesale Company v. Scudder. The site for that is 440 S.E. 2nd, 129. There the Supreme Court considered whether a supplier who had failed to pursue a mechanics lien could nonetheless pursue a claim for unjust enrichment. There's a split of authority on that around the country. The court recognized that split but held failure to pursue a mechanics lien will not bar an action for quantum merit recovery if a plaintiff can otherwise prove circumstances establishing unjust enrichment. And even in DEMA, the court recognized the potential unjust enrichment claim. Now, it didn't reach the issue, but it waited. It looked at whether Hamburg might bar it. And it looked at ICONCO. That's an Eighth Circuit case that stands for the proposition that even if a statute doesn't have an implied right, you can still have a cause of action. And the court ultimately didn't reach the issue. So you look at Hamburg, which is what they cite. Well, Hamburg involved the unauthorized practice of law. And in South Carolina, the Supreme Court has exclusive jurisdiction. And as I mentioned, in Hamburg, the only remedy for the unauthorized practice of law in South Carolina is to bring a declaratory action in the Supreme Court's original jurisdiction. So Hamburg is really... Red light again. Thank you, Your Honor. I'll sit down. Thank you very much. We appreciate it. I think we understand your position. We appreciate the arguments of counsel, the briefing, good briefing. We'll take the matter under advisement.
judges: Robert B. King, Allison J. Rushing, Toby J. Heytens